UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SINOTRANS LIMITED PROJECT TRANSPORTATION :
BRANCH CHINA,                                                       :
                                                                   :
                                    Plaintiff,                     :          08 Civ. _____
                                                                   :
            - against -                                            :          ECF CASE
                                                                   :
GOKUL REFOILS & SOLVENT LTD., a/k/a GOKUL                          :
REFOILS AND SOLVENTS LIMITED,                                     :
                                                                   :
                                    Defendant.                     :
-------------------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH CHINA

(hereinafter "Sinotrans"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and

for its Verified Complaint against the Defendant, GOKUL REFOILS & SOLVENT LTD. a/k/a

GOKUL REFOILS AND SOLVENTS LIMITED (hereinafter "Defendant"), alleges, upon

information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the

breach of maritime contract of charter. This matter also arises under the Court's federal question

jurisdiction within the meaning of 28 United States § 1331.

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under foreign law.

3.      Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity organized and existing under the laws of India.

4.    By a charter party dated January 24, 2008, Sinotrans chartered the vessel "HONG LUCK" (hereinafter the "Vessel") to Defendant for the carriage of grain cargo from India to South Korea. **See Exhibit "1" annexed hereto.**

5.    Pursuant to the terms of the charter, the vessel proceeded to and arrived at the port of Kandla, India on February 1, 2008 at 10:00 hours. The Vessel berthed at 20:37 hours on February 11 and loaded 16,100 MT of cargo, being 10,100 MT Indian rapeseed and 6,000 MT Indian Soyabean meal for discharge at Kunsan and Incheon, South Korea. Loading was completed at 19:15 hours on February 13 and fumigation at 20:30 hours after which the Vessel waited for the tide from 22:47 until 06:21 on February 14 February when she sailed for Kunsan.

6.    In accordance with the charter terms, laytime started at 13:00 on February 1, 2008. The Vessel went on demurrage at 08:18 on February 9 until completion of loading and fumigation at 20:30 on February 13, a period of 4.5083 days. The charter party contract provides for the payment of demurrage at the rate of $10,000/day. Thus, the 4.5083 days of demurrage is equivalent to $45,083.00.

7.    The Vessel arrived at Kunsan at 22:30 hours on March 1, 2008 and there discharged a total of 7,275.90MT of cargo, leaving on board approximately 8,824.1MT of cargo, for discharge at Incheon under bills of lading with quantities of 6,564MT Indian rapeseed and 2,200 MT Indian Soyabean meal.

8.    The Vessel completed discharge at 19:20 hours on March 8 and sailed at 20:45 hours that evening for Incheon. The laytime used was 3.17 days.

9.    The Vessel arrived at Incheon at 05:15 hours on March 9, 2008 and commenced discharge at 08:45 hours on March 10.

a.    Some of the Indian rapeseed meal in each of holds where that cargo was stowed, being holds 1, 3 and 4, was found to be mixed with discolored Indian rapeseed meal

2

and as a consequence, discharge was stopped at 13:00 hours on March 11 and did not

resume.

b.      The Defendant refused to continue discharging the Indian rapeseed meal and the

Vessel was later ordered by the Defendant to sail with approximately 6,063.880MT

on board for discharge at Ulsan.

10.      Discharge of the Indian Soyabean meal continued uninterrupted and completed at

12:00 hours on March 12.

11.      But for Defendant's actions in slowing the discharge of Indian rapeseed meal and

ultimately stopping its discharge at 13:00 hours on March 11, the entire cargo would have been

discharged by 12:00 hours on March 12.

12.      The laytime used at Incheon, from 05:15 hours March 9 up to 12:00 hours on

March 12 was 3.2812 days.

13.      Under the charter party contract, the total laytime permitted for discharge of the

cargo 8.05 days.  There was therefore time on despatch of  ((3.17+3.2812)-8.05) = 1.5988 days.

The charter party contract provides for dispatch credit to Defendant at the rate of $5,000/day.

Thus, 1.5988 days, equal $5,598.80.  **See Exhibit 2 annexed hereto.**

14.      The Vessel sailed from Incheon at 00:24 hours on March 29, 2008 and arrived at

Ulsan on March 30.  She berthed at 09:00 hours on April 3 and commenced discharge at 09:00

on April 4l.  The Vessel finally completed cargo operations at 15:20 hours and sailed at 17:30

hours on April 5.

15.      In accordance with Plaintiff's laytime calculation, demurrage is due and owing

from Defendant to Plaintiff in the sum of $39,484.20 up to 12:00 hours on March 12.  After  that

time, the Defendant was in breach of Clause 5 of the charter party contract, which required the

discharge of all the cargo.

16.    As per box 11 of the charter party contract, the Defendant exercised its option,

declaring Kunsan and Incheon as the two discharge ports. Defendant no longer had an option to

order the Vessel to Ulsan to complete discharge, and such an order was illegitimate. Plaintiff

complied with Defendant's order directing the Vessel to Ulsan, without prejudice to its right to

claim damages for Defendant's breach from 12:00 hours on March 12 until 17:30 hours on April

5 when the Vessel finally sailed from Ulsan. **See Exhibit 3 annexed hereto.**

17.    Pursuant to the charter party, all disputes arising thereunder were to be submitted

to arbitration in London with English Law to apply.

18.    Plaintiff has commenced arbitration in London against Defendant.

19.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party

under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for

recovery of these items as part of an award in favor of the prevailing party. As best as can now

be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing

party:

| | | |
|---|---|---|
| a. | Demurrage: | $ 39,484.20 |
| b. | Port expenses at Incheon after March 12 until March 29 at $1,170.21/day: | $ 19,893.57 |
| c. | Loss of profit due to market rate differential for the Vessel at $25,000/day for the period from 12:00 hours on March 12 until 17:30 hours on April 5 = 24.229 days: | $605,725.00. |
| d | The value of bunkers consumed during the 24.229 day period set forth in 19(c), above: | $ 49,881.00 |
| e. | Port expenses at Ulsan, estimated at USD35,000. | |
| f. | Interest on (a-e) for 2 years, compounded quarterly | |

| | | |
|---|---|---|
| | at 7.5% | $ 90,440.19 |
| g. | Estimated recoverable legal fees and costs: | $100,000.00 |
| **Total:** | | **$895,864.15** |

20.     The Defendant cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during

the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of one or more garnishees which are believed to be due and owing to the

Defendant.

21.     The Plaintiff seeks an order from this court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any proeprty of the

Defendant held by any garnishee within the District for the purpose of obtaining personal

jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

        **WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear

and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court

recognize and confirm any foreign judgment or arbitration award rendered on the claims had

herein as a Judgment of this Court;

C.     That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims,

attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount **$895,864.15** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.      That this Court enter Judgment against Defendant on the claims set forth herein;

E.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.      That this Court award Plaintiff its attorney's fees and costs of this action; and

G.      That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: April 11, 2008
       New York, NY

                    The Plaintiff,
                    SINOTRANS LIMITED PROJECT
                    TRANSPORTATION BRANCH CHINA


                    By: _Anne C. LeVasseur_
                        Patrick F. Lennon
                        Anne C. LeVasseur
                        LENNON, MURPHY & LENNON, LLC
                        420 Lexington Ave., Suite 300
                        New York, NY 10170
                        (212) 490-6050 – phone
                        (212) 490-6070 – fax
                        pfl@lenmur.com
                        acl@lenmur.com

6

## ATTORNEY'S VERIFICATION

State of New York   )
                 )   ss.:   New York City
County of New York )

1.      My name is Anne C. LeVasseur.

2.      I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.      I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.      The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.      The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      April 11, 2008
             New York, NY

                           Anne C. LeVasseur.

EXHIBIT 1

| 1. Shipbroker<br>INTEROCEAN SHIPPING (INDIA) PVT. LTD.<br>NEW DELHI | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME : "GENCON"<br>                      Part I |
|---|---|
| | 2. Place and date<br><br>MUMBAI, 24TH January , 2008 |
| 3. Owners/ Place of business (Cl. 1)<br><br>SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH, CHINA | 4. Charterers / Place of business (Cl. 1)<br><br>M/S. GOKUL REFOILS & SOLVENT LTD OR ITS NOMINEES. |
| 5. Vessel's name (Cl. 1)<br><br>MV HONG LUCK | 6. GT / NT (Cl 1.)<br><br>13,228.00 / 7,529.00 |
| 7. DWT all told on summer load line in metric tons (abt) (Cl. 1)<br><br>DWT 19,408.00 MTS | 8. Present position (Cl. 1)<br><br>SAILING. |
| 9. Expected ready to load (abt) (Cl. 1.)<br><br>29TH JANUARY 2008 | |
| 10. Loading port or place (Cl. 1)<br><br>1/2 SB (SA) – 1 SP BEDI ANCHORAGE – KANDLA PORT IN CHARTERERS OPTION | 11. Discharging port or place (Cl. 1)<br><br>1/2 SB - 1/3 SP SOUTH KOREA (INTENTION IN CHARTERERS OPTION – ULSAN – KUNSAN) CHARTERERS TO DECLARE THE DISCHARGE PORT BEFORE PASSING SINGAPORE. |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)<br>FULL AND COMPLETE VESSEL CAPACITY 1-2 GRADE BULK AGRIPRODUCTS STAOWAGE FACTOR ABOUT 52 – 56 OR 65 WOG CHARTERERS OPTION.<br><br>CARGO INTENTION BULK RAPE SEED MEAL (1-2 GRADE) BASIS STOWAGE FACTOR ABOUT 52/55 WOG OR IN CHARTERERS OPTION SOYA BEAN MEAL BASIS STOWAGE FACTOR 65 WOG CARGO TO BE LOADED IN HOLDWISE NATURAL SEGREGATION ONLY. | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br>USD 63 PMT FIOS BASIS 1/1 BASIS STOWAGE FACTOR 52/55<br>USD 68 PMT FIOS BASIS 1/1 BASIS STAOWAGE FACTOR 65<br>USD 2.00 PMT ON ENTIRE CARGO FOR EACH ADDITIONAL DISCHARGE PORT IN SAME RANGE. | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br><br>SEE RIDER CLAUSE 20 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load and disch. is agreed, fill in a) and b).<br>If total laytime for load and disch., fill in c) only) (Cl.6) |
| 17. Shipper/Place of business (Cl. 6) | a) Laytime for loading<br>3,000 MT PWWD SHEX EIU SATURDAY 1200 HRS – 0800 HRS MONDAY NTC EIU<br>2,000 MT PWWD SHEX EIU SAT 1200 HRS – 0800 HOURS MON NTC EIU – FOR BEDI ONLY. |
| 18. Agents (loading) (Cl.2 6)<br><br>CHARTERERS AGENTS | b) Laytime for discharging<br><br>2000 MT PWWD SHEX EIU SATURDAY 1200 HRS - 0800 HRS MONDAY NTC EIU |
| 19. Agents (discharging) (Cl. 26)<br><br>CHARTERERS AGENTS | c) Total laytime for loading and discharging<br><br>N.A. |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br><br>DEMURRAGE RATE USD 10,000  PD HALF DISPATCH WTS BOTH ENDS | 21. Canceling date (Cl. 9)<br><br>10TH February 2008 |
| | 22. General Average to be adjusted at (Cl. 12) |
| 23. Freight Tax (state it for the Owners' account (Cl. 13 (c)) | 24. Brokerage commission and to whom payable (Cl. 15)<br><br>TOTAL 3.75 PCT COMMISSION (2.5 PERCENT ADDCOMM + 1.25 PERCENT TO INTEROCEAN)  ON FREIGHT /DEADFREIGHT / DEMURRAGE |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply)  (Cl. 19)<br><br>ARBITRATION IN LONDON, ENGLISH LAW TO APPLY. | |
| | 26. Additional clauses covering special provision, if agreed<br><br>RIDER CLAUSE 20 TO 53 AS DEEMED EARNED TO BE FULLY INCORPORATED IN THIS CHARTER PARTY |
| (a)  State maximum amount for small claims/ shortened arbitration (Cl. 19) | |

It is mutually agreed that this contract shall be performed subject to the conditions contained in this Charter which shall include part I well as part II . In the event of a conflict of conditions, the provision of part I shall prevail over those of part II to the extent of such conflict

| Signature (Owners)<br>    FOR SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH, CHINA<br><br><br><br>AUTHORISED SIGNATORY | Signature (Charterers)<br>FOR GOKUL REFOILS & SOLVENT LTD.<br><br><br><br>AUTHORISED SIGNATORY |
|---|---|

PART II

"Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loading stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers on Box 4 that :
The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for the loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.
And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. **Deviation Clause**
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight    SEE RIDER CLAUSE 20**
~~(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.~~
~~(b) *Prepaid*. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost.~~
~~Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.~~
~~(c) *On delivery*. If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on calculated weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.~~
~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.~~

5. **Loading/Discharging    SEE RIDER CLAUSE 22 & 23**
(a) *Costs/Risks*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.
(b) *Cargo Handling Gear*
Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power – pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party – shall not count as laytime or time on demurrage.
On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen / winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.
(c) *Stevedore Damage* SEE RIDER CLAUSE NO. 40
~~The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.~~
~~The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.~~

6. **Laytime    SEE RIDER CLAUSE 22 & 23 & 24**
(a) *Separate laytime for loading and discharging*
~~The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count, even if used.~~
~~The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~
(b) *Total laytime for loading and discharging*.
~~The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~
(c) *Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of

readiness at Loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.
If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/ discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/ discharging berth shall not count as laytime.
If, after inspection, the Vessel is found not to be ready in all respects to load/ discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.
Time used before commencement of laytime shall count.
* Indicate alternative (a) or (b) as agreed, in Box 16

7. **Demurrage  SEE RIDER CLAUSE 25**
~~Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.~~
~~In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure; if the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.~~

8. **Lien Clause**
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. **Cancelling Clause**
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.
(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading  Rider clause 42**
Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as much loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).
If General Average is to be adjusted in accordance with, the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo .If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners,or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery.

13. **Taxes and Dues Rider clause 29**
(a) *On Vessel* –The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.
(b) *On cargo* –The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.
(c) *On freight* –Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the owners' account.

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

**14. Agency**  SEE RIDER CLAUSE 26
~~In every case the Owners shall appoint their own Agents both at the port of loading and the port of discharge.~~

**15. Brokerage**
A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.
In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.

**16. General Strike Clause**
(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the vessel waiting until such strike or lock-out is at an end against paying half demurrage after the expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to go safe port where she can safely discharge without risk of being detained by strike or lock-out. Such option to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.
(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

**17. War Risks ("Voywar 1993")**
(1) For the purpose of this Clause, the words:
(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel,her cargo,crew or other persons on board the Vessel.
(2) If at any time before the Vessel commences loading, it appears that,in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.
(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place,or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel,her cargo (or any part thereof), crew or other persons on board the Vessel(or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice(including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.
(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel,her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port,the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall, if the total extra distance exceeds 100 miles, be entitled to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:-
(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;
(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;
(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

**18. General Ice Clause**
*Port of loading*
(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.
(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.
*Port of discharge*
(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.
(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**19. Law And Arbitration**
(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-men tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.
* (b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.
* (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.
(d) If Box 25 in Part I is not filled in, sub-clause (a) of this clause shall apply.
* (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.
** Where no figure is supplied in Box 25 in Part I, this provision shall be void but the other provisions of this Clause shall have full force and remain in effect.

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

### CLAUSE 20 – FREIGHT PAYMENT

**FREIGHT:**
USD 63 PMT FIOS BASIS 1/1 BASIS STOWAGE FACTOR 52/55
USD 68 PMT FIOS BASIS 1/1 BASIS STOWAGE FACTOR 65
USD 2.00 PMT ON ENTIRE CARGO FOR EACH ADDITIONAL DISCHARGE PORT IN SAME RANGE.

95% FREIGHT PAYABLE WITHIN 3 BANKING DAYS AND SIGING / RELEASING BILLS OF LADING MARKED "FREIGHT PAYABLE" AS PER CHARTER PARTY. IN CASE CHARTERERS REQUIRE "FREIGHT PREPAID" BILLS OF LADING SAME TO BE RELEASED ONLY AFTER OWNERS CONFIRMING 95% FREIGHT IN THEIR ACCOUNT AND BALANCE 5 PERCENT WITHIN 30 DAYS AFTER COMPLETION OF DISCHARGE ON RECEIPT OF SOF/NOR/TS AND AGAINST DEMURRAGE/ DESPATCH SETTLEMENT.

DEMURRAGE/DESPATCH : USD 10,000 / HDWTSBENDS. SETTLE WITHIN 30 DAYS AFTER COMPLETION OF DISCHRAGE AND AGAINST OWNERS LAYTIME CALCULATION SUPPORTED BY NOR/SOF/TIME SHEET SIGNED/STAMPED BY CONCERNED PARTIES.

**OWNERS BANK DETAILS:**

**BANK OF CHINA BEIJING BRANCH**
ACCOUNT NO: 800118893108094014
IN FAVOUR OF: SINOTRANS LIMITED PROJECT TRANSPORTATION BRANCH
SWIFT CODE: BKCH CN BJ 110

### CLAUSE 21

CARGO TO BE LOADED IN UNOBSTRUCTED MAIN HOLDS ONLY. AS PER AGREEMENT IN FIXTURE AND AS PER MASTER APPROVAL.

### CLAUSE 22

THE CARGO TO BE LOADED AT THE RATE OF 3000 METRIC TONS PER WEATHER WORKING DAY SUNDAYS HOLIDAYS EXCLUDED EVEN IF USED TIME FROM SATURDAY 1200 HRS – 0800 HRS MONDAY NOT TO COUNT EVEN IF USED.
2,000 MT PER WEATHER WORKING DAY SUNDAYS HOLIDAYS EXCLUDED EVEN IF USED, SATURDAY 1200 HOURS – 0800 HOURS MONDAY NOT TO COUNT.

NOTICE OF READINESS AT LOADPORT AND FIRST DISCHARGE PORT TO TENDER WWWW WITHIN OFFICE WORKING HOURS I.E 0900 HOURS – 1700 HOURS ON MONDAY TO FRIDAY AND 0900 HOURS – 1200 HOURS ON SATURDAY. LAYTIME SHALL COMMENCE AT 1300 HOURS IF NOR TENDER BEFORE NOON AND AT 0900 HOURS NEXT WORKING DAY IF NOR TENDER AFTER NOON. TIME FROM SATURDAY NOON UNTILL 0900 HOURS MONDAY AND FROM 1700 HOURS ON DAY PRECEEDING A LEGAL AND LOCAL HOLIDAY UNTILL 0900 HOURS NEXT WORKING DAY NOT TO COUNT EVEN IF USED. TIME AT $2^{ND}/3^{RD}$ DISCHARGE PORT TO COUNT ON TENDERING NOR AT DISCHARGE PORTS.

### CLAUSE 23

THE CARGO TO BE DISCHARGED AT THE RATE OF 2,000 METRIC TONS PER WEATHER WORKING DAY SUNDAYS HOLIDAYS EXCLUDED EVEN IF USED TIME FROM SATURDAY 1200 HRS – 0800 HRS MONDAY NOT TO COUNT EVEN IF USED.

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

LAYTIME SHALL COMMENCE 1300 HOURS IF NOTICE OF READINESS IS TENDERED BEFORE NOON AND AT 0800 HOURS NEXT WORKING DAY IF NOTICE OF READINESS IS TENDERED AFTER NOON.TIME FROM SATURDAY NOON UNTIL MONDAY 0800 HOURS AND FROM 1700 HOURS ON THE DAY PRECEEDING A LOCAL AND LEGAL HOLIDAY UNTIL 0800 HOURS OF NEXT WORKING DAY NOT TO COUNT EVEN IF USED.

NOTICE OF READINESS TO BE TENDERED/AGREED ON A WORKING DAY DURING OFFICE HOURS I.E. 0900-1800 HOURS,WHEN VESSEL IS IN ALL RESPECTS READY TO DISCHARGE THE RESPECTIVE CARGOES, BY OWNERS / MASTER BY TELEX / FAX / CABLE MAY BE TENDERED WHETHER IN PORT OR NOT, WHETHER IN BERTH OR NOT, WHETHER IN CUSTOMS CLEARED OR NOT, WHETHER IN FREE PRATIQUE OR NOT. NOTICE OF READINESS TO BE TENDERED TO CHARTERERS AND CHARTERERS AGENTS AT THE DISCHARGE PORT.

NO TURN TIME AT DISCHARGE PORT.

### CLAUSE 24

LAYTIME TO BE NON-REVERSIBLE.

### CLAUSE 25

DEMURRAGE RATE USD 10,000 PER DAY PRO RATA AND DESPATCH IS HALF OF DEMURRAGE PER DAY PRO RATA WORKING TIME SAVED BOTH ENDS.

### CLAUSE 26

CHARTERERS NOMINATED AGENT BOTH ENDS OWNERS PAYING CUSTOMARY / COMPETITIVE AGENCY D/A.

LOAD PORT AGENTS: TO BE ADVISED

DISCHARGE PORT AGENTS: TO BE ADVISED.

### CLAUSE 27

ALL TAXES /DUES/WHARF AGES ON VESSEL / FREIGHT AT BOTH ENDS TO BE FOR OWNERS ACCOUNT.ALL TAXES/DUES ON CARGO AT BOTH ENDS TO BE FOR CHARTERERS ACCOUNT.

### CLAUSE 28

VESSEL TO WORK DAY AND NIGHT INCLUDING SATURDAY AFTERNOON SUNDAYS AND HOLIDAYS IF REQUESTED TO DO SO BY THE CHARTERERS OR THEIR AGENTS GIVING FREE USE OF VESSEL'S GEAR, WINCHES AS ON BOARD VESSEL ALSO TO SUPPLY LIGHT FOR NIGHT WORK. IF REQUIRED BY THE CHARTERERS / SHIPPERS / RECEIVERS VESSEL TO GIVE FREE USE OF CRANES / DERRICKS IN GOOD WORKING ORDER AND POWER TO DRIVE THE SAME AND LIGHT AS ON BOARD FOR NIGHT WORK, FREE OF EXPENSES TO CHARTERERS / SHIPPERS / RECEIVERS. IN CASE OF WINCHES AND / OR DERRICKS AND / OR POWER FAILURE LAYTIME NOT TO COUNT PRO RATA TO THE NUMBER OF WORKABLE HATCHES AFFECTED. VESSEL TO HAVE CURRENT CARGO GEAR / WINCH CERTIFICATES ON BOARD AND TO GIVE FREE USE OF GEARS READ TO THEIR CAPACITIES AND POWER AS PER VESSEL SPECIFICATION AND DECLARATION TO DRIVE THE SAME OWNERS TO GUARANTEE THAT THE VESSEL IS ABLE TO WORK ON ALL DERRICKS VESSEL'S CARGO GEAR DERRICKS TO BE IN GOOD WORKING ORDER AND SHALL COMPLY WITH THE REGULATIONS OF THE PORT OF LOADING / UNLOADING

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

OTHERWISE TIME LOST TO BE CALCULATED PRO RATA TO THE NUMBER OF DERRICKS DRIVERS TO WORK UNDER THE SUPERVISION OF THE MASTER. IF THE STEVEDORES, LONGSHOREMEN ON OTHER LABOURERS ARE NOT PERMITTED TO WORK DUE TO FAILURE OF THE MASTER / OWNERS TO COMPLY WITH LOCAL REGULATION, ANY DELAYS AND EXPENSES TO BE FOR OWNER ACCOUNT.

IF ANY DERRICK/CRANE BREAKDOWN THEN CHARTERERS HAVE THE RIGHT TO ENGAGE SHORE CRANE AT OWNERS COSTS/TIME AND LAYTIME TO COUNT. DURING THIS BREAKDOWN PERIOD,THE DISCHARGE RATE TO BE CALCULATED PRO-RATA.

### CLAUSE 29

OWNERS / MASTER TO GIVE 5/4/3/2/1 DAY E.T.A NOTICES AT LOAD PORT AND 5/4/3/2/1 DAYS E.T.A. NOTICES AT DISCHARGE PORT DIRECTLY TO CHARTERER'S/OWNER'S NOMINATED AGENTS.

### CLAUSE 30

AT LOADING AND DISCHARGING PORTS, FIRST OPENING AND LAST CLOSING OF HATCHES TO BE FOR OWNERS TIME AND ACCOUNT. ALL HATCHES OPENING / CLOSING TO BE PERFORMED BY VESSEL'S CREW.

### CLAUSE 31

MASTER TO TENDER NOTICE OF READINESS AT LOADING AND ALL DISCHARGING PORTS BY CABLE, WHETHER IN PORT OR NOT, WHETHER IN BERTH OR NOT, WHETHER IN FREE PRATIQUE OR NOT, WHETHER IN CUSTOMS CLEARED OR NOT PROVIDED VESSEL HAS ARRIVED AT CUSTOMARY WAITING ANCHORAGE AND IS IN ALL RESPECTS READY TO LOAD / DISCHARGE THE INTENDED CARGO.

AT LOADING PORT TIME TO COMMENCE FROM 1300 HOURS SAME DAY IF THE NOR IS SERVED BEFORE NOON, AND 0800 HOURS NEXT WORKING DAY IF NOR IS SERVED AFTER NOON. NOR TO BE TENDERED ALWAYS DURING OFFICE HOURS (BETWEEN 0800 HOURS TO 1700 HOURS) FROM MONDAY TO FRIDAY AND TILL 1200 HOURS ON SATURDAY TO CHARTERERS / THEIR AGENTS.

AT 1ST DISCHARGE PORT TIME TO COMMENCE FROM 1300 HOURS SAME DAY IF NOR IS SERVED BEFORE NOON, AND 0800 HOURS NEXT WORKING DAY IF NOR IS SERVED AFTER NOON. NOR TO BE TENDERED ALWAYS DURING OFFICE HOURS (BETWEEN 0800 HOURS TO 1700 HOURS) FROM MONDAY TO FRIDAY AND TILL 1200 HOURS ON SATURDAY TO CHARTERERS / THEIR AGENTS

"AT 2ND/3RD DISCHARGE PORTS TIME RESUME TO COUNT UPON ARRIVAL.

UPON VESSELS ARRIVAL AT LOADPORT HOLD CONDITION TO BE CHECKED JOINTLY BETWEEN CHARTERERS NOMINATED SURVEYORS AND MASTER.

VESSEL SHALL TENDER NOTICE OF READINESS WITH HOLDS CLEAN DRY AND IN EVERY WAY SUITABLE TO RECEIVE THE SPECIFIED CARGOES TO AN INDEPENDENT INSPECTORS SATISFACTION. IF HATCHES REJECTED FOR LOADING, LAYTIME NOT TO COUNT FROM TIME OF REJECTION TILL WHEN VESSEL FINALLY PASSED FOR LOADING. IF ANY CLEANING AND / OR DRYING HATCHES TO BE DONE, SAME TO BE EFFECTED AT OWNERS TIME AND COST.

### CLAUSE 32

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
### CPD 24TH JANUARY, 2008

**MV HONG LUCK**

| | |
|---|---|
| Ex name | : National Honor |
| Type | : Multi-purpose Cargo Ship |
| Class | : American Bureau of Shipping |
| FLG | : Saint Vincent |
| IMO | : 7915242 |
| Year Built | : December 1980 |
| Builder | : Hitachi Shipbuilding and Engineering Co. Japan |
| Call Sign | : J8B3509 |
| DWT Summer | : 19,409.00 mt |
| Gross Tonnage (GT) | : 13,228.00 |
| Net Tonnage (NT) | : 7,529.00 |
| Suez GRT | : 14,149.18 |
| Suez NRT | : 11,118.15 |
| Panama GRT | : 14,902 |
| Panama NRT | : 11,671 |
| LOA | : 163.06 m |
| LBP | : 152.00 m |
| Breadth. mld | : 23.10 m |
| Depth. mld | : 14.10 m |
| Draft summer | : 9.921 m |

Speed about 14 knots on 25.5 or 15 knots on 28 mt IFO (380 CST) + 2.3 mt MDO
Speed consumption is based on clean and smooth bottom,
even keel, deep and currentless water with sea temperature of
max. 28 degrees celsius, wind max. Beaufort 3.

Port Consumption :
Idle - about 1.0 mt IFO 380 CST + about 1.5 mt MDO
Working 24 hours - about 1.0 mt IFO 380 CST + about 2.5 mt MDO

IFO Tank Capacity   : 1,793 M3 @ 100% full
MDO Tank capacity   : 261 M3 @100% full
Fuel Grade/ Specs   : IFO380cst . RMG35.ISO8217.1996
                    : MDO.DMB.ISO8217.1996
HOLD DIMENSIONS (in meter):

Cargo Hold # 1:

| | Length | Width (fwd) | Width (aft) | Depth (hatchway) | Depth (bulkhead) |
|---|---|---|---|---|---|
| LH | 19.0 | 5.6 | 15.6 | 5.4 | 6.0 |
| TD | 19.0 | 7.0 | 19.7 | 5.4 | 4.0 |

Cargo Hold # 2:

| | Length | Width (fwd) | Width (aft) | Depth (hatchway) | Depth (bulkhead) |
|---|---|---|---|---|---|
| LH | 24.0 | 13.4 | 22.0 | 8.0 | 8.2 |
| TD | 24.0 | 20.0 | 22.6 | 5.4 | 4.0 |

Cargo Hold # 3:

| | Length | Width (fwd) | Width (aft) | Depth (hatchway) | Depth (bulkhead) |
|---|---|---|---|---|---|
| LH | 24.8 | 18.6 | 18.6 | 8.0 | 8.2 |

4

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

| | | | | | |
|---|---|---|---|---|---|
| TD | 24.8 | 22.6 | 22.6 | 5.4 | 4.0 |

Cargo Hold # 4:

| | Length | Width (fwd) | Width (aft) | Depth (hatchway) | Depth (bulkhead) |
|---|---|---|---|---|---|
| LH | 24.0 | 18.6 | 18.6 | 8.0 | 8.2 |
| TD | 24.0 | 22.6 | 22.6 | 5.4 | 4.0 |

Cargo Hold # 5:

| | Length | Width (fwd) | Width (aft) | Depth (hatchway) | Depth (bulkhead) |
|---|---|---|---|---|---|
| LH | 17.4 | 19.6 | 12.4 | 8.0 | 8.2 |
| TD | 17.4 | 22.6 | 22.2 | 5.4 | 4.0 |

(Note- the TD bulkhead height is applicable to the wings only. The height fwd and aft of the tweendeck opening is restricted by the tweendeck hatch cover stoppers)

Number of Decks    : 2
Number of Holds    : 5
Number of Hatches  : 9
    Hold # 1- Single Hatch, Tweendecker
    Hold # 2 to 5 - Twin Hatches, Tweendecker
    Hold #4 - Has longitudinal bulkhead on lower hold, Tweendecker
    Hold # 1, 2, 3 & 5 lower holds have supporting pillars amidships

CUBIC CAPACITY:
Total (Grain)  : 28,727.00 cu.m
    (Bale)  : 27,470.00 cu.m

Cubic capacity each hold (2nd deck hatch cover closed)

| | Grain | Bale |
|---|---|---|
| LH # 1 | 1,453 | 1,345 cu.m |
| LH # 2 | 4,486 | 4,239 cu.m |
| LH # 3 | 3,970 | 3,921 cu.m |
| LH # 4 | 3,837 | 3,785 cu.m |
| LH # 5 | 3,172 | 2,957 cu.m |
| TD # 1 | 1,462 | 1,358 cu.m |
| TD # 2 | 2,730 | 2,610 cu.m |
| TD # 3 | 2,838 | 2,703 cu.m |
| TD # 4 | 2,778 | 2,653 cu.m |
| TD # 5 | 2,001 | 1,899 cu.m |

Cubic capacity each hold (2nd deck hatch cover opened)

| | Grain | Bale |
|---|---|---|
| HOLD # 1 | 2,697 cu.m | -- |
| HOLD # 2 | 6,884 cu.m | -- |
| HOLD # 3 | 6,482 cu.m | -- |
| HOLD # 4 | 6,335 cu.m | -- |

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

HOLD # 5   4,870 cu.m   --

If loading grain in lower holds and tween decks, tween deck covers
to be opened with shifting board fitted.

CONTAINERCAPACITY
(Nominal intake):  210 teu Deck
        210 × d20s
        or
        50 ×d20s (fixed) + 80 × d40s - or combination
        No containers are allowed in Holds

Stowage of containers on deck always subject to stability,visibility,
permissible stackweights, and at Master's discretion and according
to vessel's container lashing and stowage plan.

PERMISSIBLE STACKWEIGHTS:
    DK (2tiers) - 40 mT for 20'/ 50 mT for 40'
PERMISSIBLE UNIFORM LOAD:
    LH   - 11.7 mT/ sq.m
    TD   - 3.0 mT/ sq.m
    DK   - 2.0 mT/ sq.m

HATCH SIZES: (Type: Hydraulic - McGregor Steel Folding Hatch Cover)

|          | Length × Breadth |
|----------|------------------|
| Hatch # 1 | 12.8m× 10.4m / 8.0m× 1 |
| Hatch # 2 | 19.2m× 8.0m× 2 row |
| Hatch # 3 | 19.2m× 8.0m× 2 row |
| Hatch # 4 | 19.2m× 8.0m× 2 row |
| Hatch # 5 | 12.8m× 8.0m× 2 row |

CARGO GEARS: (Type: Electro - hydraulic Driven Jib Crane)
    Crane Single:       16mT (hold #1, #2 and #5)
            Max. reach 22m @ 25 deg.
            25mT (hold #3 and #4)
            max reach 22m @ 25 deg.
    Double (in tandem):   50mT (hold #3 and #4)
            Max reach 22m @ 25 deg.

## CLAUSE 33

OWNERS TO GUARANTEE THAT THE VESSEL WILL COMPLY WITH ALL LAWS AND
REGULATIONS IN THE TRADE AND VESSEL WILL BE EMPLOYED THROUGHOUT THE
DURATION OF THE CHARTER PARTY.THE VESSEL TO HAVE ALL VALID CERTIFICATES,
FAILING WHICH CONSEQUENCES AND EXPENSES ARISING THEREFROM TO BE FOR
OWNERS' ACCOUNT.

## CLAUSE 34

THE VESSEL TO HAVE VALID CALIBRATION SCALE ON BOARD AND ALL NECESSARY
DATA TO MAKE AND ACCURATE DRAFT SURVEY OF CARGOES LOADED DRAFT MARKS
SHOULD BE CLEARLY MARKED.

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

### CLAUSE 35

ALL DISPUTES ARISING OUT OF THIS CHARTER PARTY, WHICH CANNOT BE AMICABLY SETTLED BY BOTH PARTIES DISCUSSING IN GOOD FAITH, IN CASE OF NO AMICABLE SETTLEMENT REACHED, DISPUTES SHALL BE REFERRED TO ARBITRATION IN SINGAPORE WITHIN 12 MONTHS AFTER FINAL DISCHARGE UNLESS THE PARTIES AGREE UPON A SOLE ARBITRATOR THE REFERENCE SHALL BE FOR TWO ARBITRATOR, ONE TO BE APPOINTED BY EACH OF THE PARTIES WHO WILL HAVE THE POWER TO APPOINT AN UMPIRE. IF THEY DISAGREE THE ARBITRATORS AND UMPIRE SHALL BE MEMBERS OF THE LONDON MARITIME ARBITRATORS ASSOCIATION OR OTHERWISE QUALIFIED BY EXPERIENCE TO DEAL WITH COMMERCIAL SHIPPING DISPUTES. THE CHARTER PARTY IS GOVERNED BY ENGLISH LAW. ARBITRATION IF ANY ENFORCEBLE AS PER ENGLISH LAW IN SINGAPORE.

### CLAUSE 36

P AND I CLUB BUNKERING CLAUSES, NEW JASON CLAUSE, THE GENERAL PARAMOUNT CLAUSE, THE CHAMBER OF SHIPPING, WAR RISK CLAUSES 1 & 2, BOTH TO BLAME COLLISION CLAUSE POLLUTION CLAUSE,DEVIATION CLAUSE DEEM TO BE INCORPORATED IN THIS CHARTER PARTY.

### CLAUSE 37

OWNERS CONFIRM THAT THE VESSEL IS ALLOWED TO LOAD AND DISCHARGE AT ALL PORTS AS PER CHARTER PARTY AND IS NOT BLACKLISTED BY ANY AUTHORITES / UNIONS FOR ANY REASONS WHATSOEVER MASTER TO LOAD/DISCHARGE THE CARGO IN ACCORDANCE WITH THE REGULATIONS AT THE RESPECTIVE PORTS OF CALL.

### CLAUSE 38

THE VESSEL IS FITTED WITH POWER AS DESCRIBED, WHICH WILL ENABLE ALL CARGO GEARS TO WORK SIMULTANEOUSLY WITH EFFICIENCY IN COMPLIANCE WITH S.W.L. OF CARGO GEARS. OWNERS GUARANTEE THAT VESSEL DERRICKS HAVE MINIMUM LIFTING CAPACITY AS PER CLAUSE NO.32 AND ARE ABLE TO WORK SIMULTANEOUSLY AND SERVE ALL HOLDS.

### CLAUSE 39

TIME LOST BY REASONS OF ALL OR ANY OF THE FOLLOWING CASE SHALL NOT BE COMPUTED IN THE LOADING OR DISCHARGING TIME, WAR, REBELLON, TUMULTS, CIVIL COMMISSIONS, INSURRECTIONS, RIOTS, EPIDEMICS, QUARANTINE, LOCKOUTS, STOPPAGE OR WORKMEN, LIGHTERMAN, TUG BOATMEN OR OTHER HANDS ESSENTIAL TO THE WORKING, CARRIAGE, DELIVERY, SHIPMENT OF DISCHARGE OF THE SAID CARGO WHETHER PARTIAL OR GENERAL AT RECEIVERS WORK OF WHARF, LANDSLIDES, CUSTOMS AND/OR OTHER CONSTITUTED AUTHORITIES PARTIAL OR TOTAL STOPPAGE ON RIVERS, CANNALS OR ANY OTHER CLAUSE BEYOND THE CONTROL OF THE CHARTERERS THAT IS FOREIGN TO THE VENTURE INSURMOUNTABLE AND UNFORSEEABLE (FORCE MAJEURE).

### CLAUSE 40

ALL STEVEDORE DAMAGE TO THE VESSEL TO BE SETTLED DIRECTLY BETWEEN THE OWNERS AND STEVEDORES, BUT IN CASE OWNERS / MASTER ARE NOT ABLE TO SETTLE THEIR CLAIM WITH STEVEDORES THEN CHARTERERS TO ASSIST OWNERS BEST POSSIBLE WAY IN SETTLEMENT OF SUCH A CLAIM.

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

IT IS UNDERSTOOD THAT VESSEL SHALL BE LOADED / DISCHARGED BY GRABS / RUBBER WHEELED BULLDOZERS ETC. OWNERS WILL ENSURE THAT PIPES, SWEAT BATTENS, FITTINGS ETC ARE ADEQUATELY PROTECTED AGAINST DAMAGES.

### CLAUSE 41

THE STEVEDORES ALTHOUGH APPOINTED AND PAID BY THE CHARTERERS / SHIPPERS / RECEIVERS OF THEIR AGENTS AT BOTH ENDS TO REMAIN UNDER THE DIRECTION AND THE CONTROL OF THE MASTER, WHO WILL BE RESPONSIBLE FOR THE PROPER LOADING STOWAGE DISCHARGING AND THE SEAWORTHINESS OF THE VESSEL.

### CLAUSE 42

CHARTERERS AGENTS TO BE GIVEN AUTHORITY BY THE MASTER / OWNERS TO ISSUE "FREIGHT PREPAID" BILLS OF LADING AT THE LOAD PORT, UPON OWNERS CONFIRMATION OF RECEIPT OF 100% FREIGHT REMITTANCE ADVISE AS PER CHARTER PARTY FOR QUANTITIES AS AND WHEN LOADED ONBOARD SUBJECT THE B/L DRAFT TO BE CONFIRMED BY THE OWNERS BEFORE ISSUANCE.

MASTER / OWNERS AGENTS TO GIVE AUTHORITY TO THE CHARTERERS AGENTS AT THE LOAD PORT TO ISSUE BILLS OF LADING AS PER CHARTER PARTY IN ACCORDANCE WITH THE MATES RECEIPTS, CHARTERERS OPTION TO TAKE BILLS OF LADING FOR PART QUANTITY LOADED ON BOARD.

CHARTERERS MAY REQUIRE SWITCH/SECOND SET BILLS OF LADING AND OWNERS AUTHORISE CHARTERERS NOMINATED AGENTS TO ISSUE SAME UPON RECEIPT OF FREIGHT AND AGAINST PRESENTATION OF LOI AS PER OWNERS P AND I CLUB WORDINGS. HOWEVER, CHARTERERS WOULD SURRENDER THE FIRST SET OF BILLS OF LADING WITHIN 15 DAYS AFTER ISSUANCE OF SECOND SET OF BILLS OF LADING."SECOND SET BILLS OF LADING ISSUANCE IS ALWAYS SUBJECT TO THE OWNERS' CONFRIMATION ON THE ALREADY DISPATCHED DRAFT OF THE SAME."

1ST SET OF BILLS OF LADING TO BE ISSUED IN CONFORMITY WITH MATES RECEIPT AND TO BE RELEASED AT LOAD PORT BY CHARTERERS AGENTS AT THE LOAD PORT MARKED "FREIGHT PAYABLE AS PER CHARTER PARTY" FOR QUANTITIES AS AND WHEN LOADED BILLS OF LADING WEIGHT TO BE FINALLISED BY AN INDEPENDENT/JOINT SURVEYOR AS APPOINTED BY BOTH PARTIES AS PER 100 % SHORE WEIGHTMENT FIGURES IN CONFORMITY WITH THE MATES RECEIPT.

BILLS OF LADING "CONTENT" TO BE IN CONFIRMITY WITH MATES RECEIPT AND TO HAVE NO NOTATION OTHER THAN "SAID TO WEIGH" AND "SAID TO CONTAIN". MASTER TO LOAD ONLY CLEAN CARGOES AND ISSUE BILLS OF LADING MARKED"CLEAN ON BOARD"." INCASE OF SIGNIFICANT REMARK ON MATE RECEIPTS (OTHER THAN SAID TO WEIGH/SAID TO CONTAIN AND QUALITY/QUANTITY UNKNOWN) CLEAN BILLS OF LADING ISSUANCE IS ALWAYS SUBJECT TO CHARTERERS LOI WORDED AS PER THE OWNER'S P & I CLUB FORMAT".

### CLAUSE 43

NO CARGO TO BE LOADED IN DEEPTANKS, WINGTANKS OR BUNKER SPACES OR OTHER IN ACCESSIBLE SPACES, MASTER TO HAVE LIBERTY OF LOADING IN SUCH SPACES FOR THE PURPOSE OF STABILITY OF THE VESSEL AND EXPENSES INCURRED FOR LOADING / DISCHARGING FROM SUCH SPACES TO BE ON ACCOUNT OF PARTY ORDERING SAME. TIME TO BE CALCULATED AT HALF THE SPECIFIED RATE OF LOADING / DISCHARGING.

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

### CLAUSE 44

VESSEL IS TO BE GUARANTEED SUITABLE FOR GRAB DISCHARGE IN SO FAR AS THE
VESSEL OF DESCRIPTION/ CLASS CAN BE. OWNERS GUARANTEE THE VESSELS HATCH
COVERS ARE TO BE WATERTIGHT ALL THROUGHOUT THIS CHARTER PERIOD AND IF ANY
HATCH COVER FOUND DEFECTIVE SAME TO BE RECTIFIED AT OWNERS TIME AND
EXPENSES TO CHARTERERS SATISFACTION.

### CLAUSE 45

CHARTERERS AND/OR THEIR AGENTS ARE HEREBY AUTHORISED TO SIGN THE BILLS OF
LADING ON OWNERS / MASTER' S BEHALF WITHOUT PREJUDICE TO THE TERMS AND
CONDITIONS OF THE CHARTER PARTY BUT IN STRICT CONFIRMITY WITH QUANTITY AS
PER INDEPENDENT CARGO SURVEYORS REPORT WITH SHORE WEIGHT CERTIFICATE BY
INDEPENDENT SURVEYOR

B/L WEIGHT TO BE FINALISED BY 100% SHORE WEIGHMENT, COUNTER CHECKED BY
DRAFT SURVEY BY INDEPENDENT SURVEYORS IN SUCH CASE MARKED BILLS OF LADING
TO BE REMARK QUALITY/QUANTITY UNKNOW.

### CLAUSE 46

AT LOADING PORT SHIFTING EXPENSES OF SHIFTING TO 2ND BERTH TO BE
CHARTERERS' ACCOUNT AND TIME TO COUNT AS LAYTIME SHIFTING FROM ANCHORAGE
TO BERTH TO BE ON OWNERS ACCOUNT AND TIME NOT TO COUNT AS LAYTIME.

### CLAUSE 47

OWNERS GUARANTEE THAT VESSEL IS CLASSED TO LLOYDS 100 A1 OR EQUIVALENT
AND WILL REMAIN SO FOR THE DURATION OF THIS VOYAGE. OWNERS GUARANTEE
THAT VESSEL IS ENTERED WITH AND INSURED FOR ALL CARGO RISKS WITH A
RECOGNISED FIRST CLASS P AND I CLUB AND WILL REMAIN SO FOR THE DURATION OF
THIS VOYAGE AND THAT ALL CALLS INCLUDING SUPPLEMENTARY CALLS ARE FULLY
PAID UP.

OWNERS GUARANTEE THAT THE VESSEL IS FULLY H & M INSURED AND WILL REMAIN
SO FOR THE DURATION OF THIS VOYAGE.

OWNERS GUARANTEE THAT ALL VESSEL CERTIFICATES INCLUDING GEAR CERTIFICATES
ARE VALID AND FULLY UPTO DATE AND OWNERS ACCEPT TO MAKE AVAILABLE TO
CHARTERERS FOR INSPECTION IF REQUESTED.

OWNERS GUARANTEE THAT VESSEL HOLDS ARE CLEANED AND FREE OF ANY
OBSTRUCTION / BULKHEADS / STAUNCHIONS AND THAT THE VESSEL IS IN EVERY WAY
SUITABLE TO SHIP / LOAD / DISCHARGE THE INTENDED CARGO.

OWNERS WARRANT THAT VESSEL HOLDS ARE CLEAR OF ANY FITTING / SUPER
STRUCTURES SUCH AS CAR DECKS CURTAINS PLATES WHATSOEVER AND TO BE
SUITABLE FOR GRAB DISCHARGE.

OWNERS/MASTER NOT TO CARRY ANY OTHER CARGO OTHER THAN CHARTERERS
CARGO.

OWNERS CONFIRM VESSEL DO NOT HAVE CELL GUIDES ON ANY OF THE CARGO HOLDS.

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

### CLAUSE 48

SHIPSIDE TALLY FOR OWNERS ACCOUNT AND SHORE SIDE TALLY FOR THE CHARTERERS ACCOUNT.

THE CARGO TO BE LOADED, STOWED, TRIMMED AND DISCHARGE FREE OF RISKS AND EXPENSES TO THE VESSEL. TRIMMING TO BE DONE ACCORDING TO THE MASTER'S REASONABLE SATISFACTION AND ANY ADDITIONAL TRIMMING TO BE ON CHARTERERS ACCOUNT.

### CLAUSE 49

OVERTIME TO BE FOR THE ACCOUNT OF THE PARTY ORDERING THE SAME IF ORDERED BY THE PORT AUTHORITY, OVERTIME TO BE FOR THE CHARTERERS ACCOUNT.BUT CREW AND OFFICERS OVERTIME TO BE ALWAYS FOR OWNERS ACCOUNT.

IN CASE ORIGINAL BILLS OF LADING NOT AVAILABLE AT DISCHARGE PORT CARGO TO BE RELEASED TO RECEIVERS AGAINST CHARTERERS SIMPLE LOI AS PER OWNERS PNI WORDINGS.

### CLAUSE 50

LOAD PORTS: 1/2 SB - 1 SP KANDLA, INDIA

DISCHARGE PORTS: 1/2 SB - 1/3 SP SOUTH KOREA OUT OF INCHON, KUNSAN & ULSAN DISPORT ROTATION IN GEOGRAPHICAL ORDER I.E SOUTHERN MOST PORT IN KOREA TO NORTHERN MOST PORT OR ELSE NORTHERN MOST PORT TO SOUTHERNMOST PORT IN THAT ORDER - SAME IN CHARTERERS/RECEIVERS OPTION

### CLAUSE 51

NO DUNNAGE/SEPERATION/MATS REQUIRED BY THE CHARTERERS AS WELL AS BY OWNERS.

OWNERS/ MASTER TO ALLOW FUMIGATION ON BOARD THE VESSEL BUT COST OF FUMIGATION AND TIME TO THE CHARTERERS ACCOUNT.

GENERAL AVERAGE / ARBITRATION TO BE SETTLED IN LONDON. ENGLISH LAW TO BE APPLIED.

### CLAUSE 52

THIS CHARTER PARTY TO BE KEPT STRICTLY PRIVATE AND CONFIDENTIAL.

## RIDER CLAUSES TO M.V. HONG LUCK /GOKUL REFOILS
## CPD 24TH JANUARY, 2008

**CLAUSE 53**

IN CASE IT IS FOUND THAT THE CARGO IS NOT SUITABLE TO ISSUE CLEAN MATE'S RECEIPT, PRIOR LOADING, BY "AN INDEPENDENT JOINT SURVEYOR, WHOSE TIME & COST WOULD BE ON THE CHARTERERS ACCOUNT".THEN CHARTERERS/SHIPPERS TO REPLACE WITH CLEAN CARGO.

**CLAUSE 54**
TWEEN CHARGES AT DISCHARGE PORT TO OWNERS ACCOUNT.

**CLAUSE 55:**

POWER: OWNERS TO GUARANTEE 440 VOLTS AND 63 APMS POWER TO OPERATE GRABS.

**CLAUSE 56:**
OVER AGE PREMIUM : OWNERS CONTRIBUTING USD 2000 LUMPSUM.

**CLAUSE 57:**
CHARTERERS HAVE OPTION TO FUMIGATE CARGO ON BOARD AT THEIR COST AND OWNERS TO ALLOW MAXIUM 12 HOURS FREE TIME FOR FUMIGATION AT LOAD PORT AND DISCHARGE PORT.

**OWNERS**
**IRISL EUROPE GMBH**

**CHARTERERS**
**GOKUL REFOILS & SOLVENT LTD**

------------------------------
**AUTHORISED SIGNATORY**

----------------------------------------
**AUTHORISED    SIGNATORY**

EXHIBIT 2

## 高宇航

发件人：高宇航
发送时间：2008年4月7日星期一 16:10
收件人："Laurence McFadyen"；程亚林；'John Price'
抄送：袁路；吴伟(工程物流)；袁俊华；'mariner.luiss@andrewlin.com.hk'
主题：答复：MV HONG LUCK AT ULSAN
重要性：高

Dear sir,

Good day.
Subjoin to below email.

| | |
|---|---|
| NOR Tendered at | 2310L 1st Mar (by master at Kunsan) |
| NOR Tendered at | 0900L 3rd Mar (according to recap) |
| Discharge time commence at | 1300L 3rd Mar (according to recap) |
| Work stopped due to strong wind | TTL 1.79days (according to recap) |
| Vsl sailed from Kunsan at | 2045L 8th Mar (according to master's report) |
| Discharge time completed at Kusan | 1200L 8th Mar (Saturday) |
| Discharge time used at Kunsan | 3.17days |
| Vsl arrived at Inchon | 0500L 9th Mar (Sunday) |
| Discharge time commence at | 0800L 10th Mar (Monday) |
| Work stopped due to cargo quantity | 1200L 12th Mar |
| ~~Discharge time used at Inchon~~ | ~~2.17days~~ |
| ~~TTL time used at both two ports~~ | ~~5.34days~~ |
| ~~Free Time in recap~~ | ~~8.05days~~ |
| ~~Balance Time~~ | ~~2.71days~~ |
| Departed from Ulsan | 1730 5th Apr |
| Full damage detention days | 24.23days |
| Full damage detention per day | 28,170.21USD |
| Full damage detention | 682,564.19USD |
| Extra port cost at Inchon & Ulsan | 60,000 USD |
| TOTAL LOSS TO BE CLAIMED AT DISCHARGE PORT (A) | 742,564.19USD |
| Plus demurrage at loading port KANDLA (B) | 49,188USD |
| TOTAL LOSS TO BE CLAIMED (A+B) | 791752.19USD |

Any problem ,pls do not hesitate to contact us.

*Thanks&Best regards*

高宇航 Hope. Y. Gao (MS)

- 中国外运股份有限公司 工程物流事业部
- Project Logistics Division Sinotrans Limited
- Add:7th Floor,Sinotrans Plaza,A43 Xizhimen Beidajie,Beijing 100044,P.R.China
- Tel:86-10-62296974
- Fax:86-10-62295787/5797/5082
- Mobile:86-13911721823
- Email:gaoyuhang@sinotrans.com

发件人：高宇航

2008-4-7

EXHIBIT 3

**Anne Levasseur**

| | |
|---|---|
| **From:** | 程亚林 [chengyalin@sinotrans.com] |
| **Sent:** | Saturday, April 05, 2008 9:48 AM |
| **To:** | Laurence McFadyen; John Price |
| **Cc:** | 董玉成; 袁兢; 吴佳(工程物流); 高宇航; 袁俊华; marineclaims@andrewliu.com.hk |
| **Subject:** | 答复: MV HONG LUCK AT ULSAN |

Dear McFadyen

Tks for your msg.Vessel is now discharging balance cargo at Ulsan and etd in the midnight of 5th April Korean local time.


Demurrage calculation:

A) At loading port Kandla,India:


NOR TENDERED          1000L 1ST FEB

Laytime commence       1300L 1st FEB

Laytime stopped        2130L 1st FEB

Laytime recommenced     0800L 4th FEB

Laytime free          5.3667 days

Demurrage from         0818L 9th FEB

Vsl sailed(Demurrage stopped)  0621L 14th FEB

TTL Demurrage time       4.9188 days

TTL Demurrage  at Kandla       4.9188*USD10000=49,188USD


B) at discharging port Inchon and Ulsan:

Discharge stopped at 12:00 12th March until 09:00 4th April.  That period is 23 days.  At the market rate for the vessel plus expenses totalling US$26,170.21/day, the sum of US$628,085.00 is currently claimed.

1

Extra port costs at Ulsan are estimated at US$35,000.

The value of bunkers consumed from 12th March until dropping the outward pilot at Ulsan is estimated at US$49,881.00.

A total sum, in addition to the demurrage due under the above charter is claimed of USD 712,966.00.

TOTAL: USD762,154.-

Tks for your kindly support.

Tks/B.rgds

********************************************************************

Clarence Cheng   程亚林

CHARTERING MANAGER

PROJECT LOGISTICS DIVISION , SINOTRANS LIMITED

中国外运股份有限公司 工程物流事业部

Tel: +86-10-62295264

Mob:+86-13911190472

Fax: +86-10-62295082

E-Mail:chengyalin@sinotrans.com

Add: 7th Floor, Sinotrans Plaza, A 43 Xizhimen Beidajie, Beijing 100044,China

********************************************************************